United States District Court
Southern District of Texas
FILED

DEC 3 0 2015

Clerk of Court

United States District Court
Southern District of Texas
**ENTERED**
January 04, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| FRANCISCA PENA | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-14-914 |
| | § | |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

**REPORT & RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) on October 27, 2014.  (Dkt. Entry No. 1.)  The case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b).  Pending before the Court are the parties' Motions for Summary Judgment.  (Dkt. Entry Nos. 12; 15.)  Plaintiff also filed a reply to Defendant's motion.  (Dkt. Entry No. 18.)  This case is ripe for disposition.

Based on a review of the pleadings and record, the undersigned recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** to the extent it is consistent with the findings and conclusions in this Report, that Defendant's Motion for Summary Judgment be **DENIED**, and that the Commissioner's final decision be **REVERSED AND REMANDED** for proceedings consistent with the findings and recommendations in this report.  It is further recommended that this civil case be closed.

1

## I. BACKGROUND

Plaintiff filed for Social Security Income and Disability Insurance Benefits on November 17, 2011. (Dkt. Entry No. 13 at 1.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Following a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable opinion on June 20, 2013. (*Id.*) The Appeals Council denied Plaintiff's timely request for review. (*Id.* at 2.)

Plaintiff's case centers around her eye disorders. (*Id.* at 2.) Plaintiff was 51 years old when the ALJ issued the decision, and she completed the ninth grade in Mexico and is "basically unable to speak or understand English." (*Id.*) Plaintiff's alleged onset date was September 12, 2011. (*Id.* at 1.) Plaintiff's most current work was as a home health provider, which she performed for many years. (*Id.* at 3.)

## II. STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act. *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558,

564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* A finding of no

substantial evidence is appropriate only where no credible evidentiary choices or medical findings

exist to support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the findings of

the Commissioner are supported by substantial evidence in the record as a whole, the findings are

conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court

must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864

F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the

Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record,

nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if

the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496

(alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is

deferential to the Commissioner's decision, but without being so obsequious that it renders the

review meaningless. *Id.*

    Although the reviewing court does not reweigh the evidence nor try the issues *de novo*, the

court does analyze or evaluate the evidence to determine whether substantial evidence exists, *e.g.*,

*Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient

for a reasonable mind to accept as adequate to support a conclusion), and to determine whether any

errors are harmful or prejudicial for the purposes of a remand, *see, e.g., Morris v. Bowen*, 864 F.2d

333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand

only if such improprieties would cast into doubt the existence of substantial evidence to support the

ALJ's decision)*; Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an

ALJ fails to fairly develop the record and facts, the claimant must show prejudice by demonstrating

3

that, had the ALJ had developed the record fairly, the ALJ could and would have adduced evidence that might have altered the result).

### III. ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

4

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. 18);  (2) Plaintiff has the following medically determinable impairments: corneal opacity,[1] keratoconus,[2] and corneal edema of the left eye - status post cornea replacement,[3] aphakia of the right eye,[4] and obesity, but these do not constitute severe impairments (R. 18).  Thus, at step two, the ALJ concluded that Plaintiff is not disabled within the meaning of the Act.  (R. 18.)

## IV.  SUMMARY OF THE PLEADINGS

In her Motion for Summary Judgment, Plaintiff argues that the "ALJ's decision must fail because it is founded on the application of an incorrect severity standard and other dispositive factual

---

[1]   According to Mount Sinai's website and its catalogue of disorders of diseases, http://www.mountsinai.org/patient-care/health-library/diseases-and-conditions/corneal-opacity (last visited December 2015), "[c]orneal opacity is a disorder of the cornea," and it "occurs when the cornea becomes scarred."  "This stops light from passing through the cornea to the retina and may cause the cornea to appear white or clouded over."  "Infection, injury, or swelling of the eye are the most common causes of corneal opacity."  Symptoms may include "vision decrease or loss;" "pain in the eye or feeling like there is something in your eye;" "eye redness, excessive tearing, or light sensitivity;" or, cause areas on the eye to appear cloudy, milky, or not completely transparent.

[2]   "Keratoconus is a degenerative disorder of the eye in which structural changes within the cornea cause it to thin and change to a more conical shape than the more normal gradual curve. Keratoconus can cause substantial distortion of vision, with multiple images, streaking and sensitivity to light all often reported by the patient." (Dkt. Entry No. 13 at 4 n.9.)  Where Plaintiff has provided a general description of a disorder, the undersigned will refer to it.  Defendant does not contest these descriptions.

[3]   Corneal edema refers to the to the accumulation of fluid and may affect optical performance. Other symptoms of corneal edema may include: eye discomfort, halos around light, sensitivity to foreign particles, and photophobia (increased sensitivity to light). (Dkt. Entry No. 13 at 5–6 n.13.)

[4]   "Aphakia is the absence of the lens of the eye, due to surgical removal, a perforating wound or ulcer, or congenital anomaly." (Dkt. Entry No. 13 at 3 n.4.)

and legal errors committed while applying that erroneous standard." (Dkt. Entry No. 13 at 7.) "Specifically, the ALJ: (1) failed to apply the correct severity standard; (2) failed to consider the combined effects of all of Ms. Pena's medically-established impairments; (3) failed to properly discuss and weigh the medical opinion evidence; (4) failed to properly assess credibility; and (5) ultimately rendered a step 2 denial that is not supported by the evidence." (*Id.*) Plaintiff argues that the ALJ failed to consider whether Plaintiff met a closed period of disability beginning roughly around February 2012 and continuing through the next 12 or 13 months (roughly), which encompasses the period of time that leading up to the cornea transplant in her left eye and the period shortly thereafter. In other words, Plaintiff argues that the ALJ failed to consider whether Plaintiff had a severe left eye impairment lasting at least 12 months, which, if so (and absent the alleged errors at Step 2), would have required the ALJ to continue the sequential evaluation process to determine whether she had, at the minimum, a closed period of disability. (*See* Dkt. Entry No. 13 at 13–15.) Plaintiff also argues she was prejudiced by the ALJ's legal errors. (*Id.* at 8.)

Defendant argues that the ALJ applied the proper legal standards—with particular focus on the severity standard used at Step 2, the ALJ's evaluation of the medical evidence, and the ALJ's credibility determination, and Defendant argues that the ALJ's conclusions and the decision are supported by substantial evidence. (*See* Dkt. Entry No. 16.) Defendant does not argue that Plaintiff was not prejudiced; instead, Defendant takes the position that the ALJ applied the proper severity standard at Step 2 and did not otherwise err in the process. (*See id.*)

## V.  APPLICABLE LAW & ANALYSIS

The undersigned agrees with Plaintiff's arguments that the ALJ's denial of disability at Step 2 is predicated on a number of errors in this case that were prejudicial and that there is an absence

of substantial evidence, which justify a remand. The undersigned is not persuaded by Defendant's arguments, which the undersigned notes are somewhat conclusory in nature. (*See* Dkt. Entry No. 16; *see also* Dkt. Entry No. 18 at 2 n.4.)

### A.    Relevant Law

At step two, the claimant bears the burden of demonstrating a severe impairment. *Leggett*, 67 F.3d at 564 n.2. Pursuant to the Commissioner's regulations, an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). However, the Fifth Circuit held in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ("*Stone*"), that the Commissioner must apply a more specific, refined severity standard at Step 2. Under *Stone*, an impairment is "non-severe" if it amounts only to a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* This severity threshold involves a "de minimis" showing that the impairment (or impairments) are severe enough to interfere with the ability to do work. *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir.1992). In *Stone*, the Fifth Circuit not only stated the standard for distinguishing between severe and non-severe impairments, but the court held that there is a presumption that the Commissioner does not apply the proper standard when the ALJ's opinion does not include the standard set forth in *Stone* by a direct or equivalent reference. *Stone*, 752 F.2d at 1106.

An ALJ's failure to specifically or clearly reference the *Stone* severity standard in the written decision may not always result in an automatic remand on judicial review if it is evident that the ALJ properly applied the standard. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *accord Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) (explaining that, while *Stone* does not

7

require an ALJ to use "magic words" and "does not require a wholesale remand of all severity cases," a remand may be appropriate where there is no indication the ALJ *applied* the correct severity standard). Stated another way, *Stone* errors may be subject to the harmless error rule—meaning, that there will be no remand if the error did not affect the substantial rights of the disability claimant. *See Taylor*, 785 F. 3d at 603 (re-iterating that "procedural perfection is not required unless it affects the substantial rights of a party.").

There are some Fifth Circuit cases that support the proposition that a Step-2 error under *Stone* is generally not harmful if the ALJ proceeds to later steps in the sequential analysis. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir.1987); *see also Herrera v. Commissioner of Social Sec.*, 406 F. App'x 899, 903, 2010 WL 5421297, at *3 (5th Cir. 2010) (unpublished) (citing *Adams v. Bowens* for this proposition). A number of district-level courts have stated that, if the ALJ proceeds past Step 2, then a failure to adhere to the Fifth Circuit's *Stone* severity standard is, as a general rule, going to amount to harmless error. *See, e.g., Malone v. Colvin*, 2015 WL 1291824, at *13 (S.D. Tex. 2015) (unpublished) (Johnson, M.J.); *Garcia v. Astrue*, 2012 WL 13716, at *13 (unpublished) (S.D. Tex. 2012) (Ormsby, M.J.).

Under the regulations, pain and other symptoms—*i.e.*, subjective complaints—are considered at each step of the sequential process, including step two. *See* 20 C.F.R. § 404.1529 ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether your impairment or combination of impairment(s) is severe."); Social Security Ruling (SSR) 96–3P, 1996 WL 374181, at *2 (S.S.A. July 2, 1996) ("Because a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered.").

The proper legal standard for the evaluation of subjective complaints of pain and other symptoms consists of a two-step process. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); SSR 96-7p, 1996 WL 374186, at *1. First, an individual must establish a medically determinable impairment that is capable of producing the alleged pain or other symptoms. *See, e.g.*, 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); *Ripley*, 67 F.3d at 556. Second, once a medical impairment that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms may affect the individual's ability to do basic work activities. *See, e.g.,* 20 C.F.R. § 404.1529(c) (explaining how the adjudicator evaluates the intensity and persistence of symptoms, such as pain, and determines the extent to which the symptoms limit the capacity for work); SSR 96-7p, 1996 WL 374186, at *1; SSR 96–3P, 1996 WL 374181, at *2 (stating that "once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe"); *Ripley*, 67 F.3d at 556 ("Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.").

As a general rule, the ALJ must make affirmative credibility findings regarding a claimant's subjective complaints. *Falco. v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (per curiam) ("An ALJ's unfavorable credibility evaluation of a

claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."). The ALJ's credibility assessments are due considerable deference if supported by substantial evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (discussing the issue of "pain" as a disabling impairment). At the same time, an ALJ "cannot simply make conclusory statements regarding credibility," and the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Giles v. Astrue*, 433 F. App'x 241, 249, 2011 WL 2847449, at *7 (5th Cir. 2011) (unpublished) (citing 61 FR 34483-01). "[W]hen the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints. . . ." *Falco*, 27 F.3d at 163 (citing *Abshire*, 848 F.2d at 642).

An ALJ has a duty to fully and fairly develop the facts relative to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If he fails to do, reversal is appropriate only if the applicant shows that he was prejudiced. *Id.* Prejudice can be established by showing that, had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220.

### B.   Analysis

In this action, the ALJ cited to *Stone* in the body of the opinion. (R. 18–19.) Plaintiff alleges that the "decision rests entirely on the boilerplate Agency construction (for a severity finding) that the Fifth Circuit has repeatedly rejected (Tr. 16, 18-19, 21)." (Dkt. Entry No. 19 at 9.) The undersigned recognizes, consistent with Plaintiff's argument, that much of the language in the ALJ's written decision indicates that the proper severity standard was not employed because the ALJ

10

paraphrases or references on multiple occasions a severity standard that does not track the language of *Stone* and only refers to *Stone* on one occasion. (*See* Dkt. Entry No. 13 at 10.) However, the undersigned finds that the decision is subject to reversal and remand for other reasons.

The undersigned finds that the ALJ's decision that Plaintiff's vision issues are not severe is not supported by substantial evidence and is the result of harmful legal error in the ALJ's handling of the evidence from the physicians and Plaintiff's credibility. *E.g.*, *Taylor*, 706 F.3d at 603 (explaining that a legal error is not harmless if affects the substantial rights of a party"); *Morris*, 864 F.2d at 335 ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision); *Kane*, 731 F.2d at 1220 (explaining that prejudice involves showing that, "had the ALJ done his duty [to develop the record and facts fairly], she could and would have adduced evidence that might have altered the result.").

The evidence underlying the Step-2 finding with regard to the ocular impairments appears to be the ALJ's adverse conclusion that Plaintiff's impairments are not as limiting as she claims (R. 19), which includes references to Plaintiff's oral and written testimony about her daily living activities; the opinions of the non-examining agency physicians, who opined that Plaintiff's impairments are not severe—and whose opinions the ALJ gave "great weight" (R. 21); the absence of an opinion from a treating physician about Plaintiff's ability to perform work-related functions (R. 21); and, references to particular medical records (R. 20), which the ALJ also used as evidence to support an implied conclusion that Plaintiff's eye impairment is controlled or controllable.[5]

---

[5] To the extent this implied finding refers to the correction of Plaintiff's problems with the left eye through the cornea transplant in 2013, it is nevertheless problematic because the ALJ failed to address whether Plaintiff met a closed period of disability prior to the cornea transplant.

However, the undersigned concludes that the decision is unsupported by substantial evidence and predicated on harmful legal error.

In the process of concluding that Plaintiff's ocular impairments are not severe, the ALJ wrote the following:

> The claimant was diagnosed with exposed valve, stable with no endophthalmitis, corneal opacity and keratoconus in the left eye. In September 2011, her left eye was doing better. She underwent surgery for valve removal of her left eye on October 31, 2011. By February 2012, she had "hand motion" visual acuity in her left eye.

> Subsequently, Roberto A. Arguello, M.D., recommended a corneal transplant on the left eye, and in February 26, 2013, the claimant underwent this procedure. The claimant testified [at the hearing] that she has to wait for a while to know if she can have better vision in this eye. However, the evidence shows that claimant's left eye condition is improved. The day after surgery, visual acuity was 20/400 in the left eye. On March 11, 2013, Dr. Arguello assessed the claimant was doing well. Visual acuity was 20/200 without correction and 20/30 in the right eye. On March 20, 2013, Plaintiff reported that her visual acuity was improving and she had no ocular pain.

(R. 20) (internal citations to the transcript omitted).  At that point, the ALJ wrote that an impairment that is controlled or controllable with appropriate treatment cannot be made the basis of a finding of disability under the regulations.  (R. 20.)

The undersigned agrees with Plaintiff that the ALJ failed to discuss evidence that was favorable to Plaintiff.[6]  Most significantly, the ALJ never discussed a report by Dr. Flores, a consulting eye specialist who examined Plaintiff on February 1, 2012. (See R. 18–21.) Dr. Flores wrote a report following Plaintiff's examination, with diagnoses and examination findings in support, and the doctor opined that Plaintiff could not "read, write, or drive" and provided prognoses

---

[6] Plaintiff is correct that the ALJ never acknowledged that Dr. Arguello, a treating physician, wrote at one point that Plaintiff would require a month to recuperate from her transplant. (Dkt. Entry No. 13 at 15.) The undersigned observes that Dr. Arguello's statement to this effect was written in a standardized form related to the acquisition of the tissue for the transplant. (See R. 355.) That said, the undersigned points out that this evidence will be available for consideration on remand.

about Plaintiff's left and right eye (poor and fair, respectively).[7]  (R. 284–85)  The ALJ did not

discuss this report in any meaningful detail or mention the favorable findings in it and, as a result,

did not explain the weight accorded to it. Not only was this favorable evidence that could have

supported Plaintiff's case at Step 2 and some of her alleged symptomology, Dr. Flores' report is

probative to the very specific issue of whether Plaintiff might meet the requirements for a period of

closed disability beginning around the time of Dr. Flores' examination.

The regulations and case law do not require an ALJ to discuss every last piece of evidence

in the written decision. *See, e.g.*, *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining

that an ALJ is generally not required to do an exhaustive point-by-point discussion of the evidence).

At the same time, the law recognizes that it is ALJ's responsibility to resolve conflicts in the

evidence. *Brown*, 192 F.3d at 496.  Nevertheless, there are some limits to these general rules.

An ALJ must adequately adhere to certain rules about evidence and opinions from

physicians, pursuant to well-settled case law and the regulations . *See, e.g, Myers v. Apfel*, 238 F.3d

617, 621 (5th Cir. 2001) ("[W]e have long held that 'ordinarily the opinions, diagnoses, and medical

evidence of a treating physician who is familiar with the claimant's injuries, treatments, and

responses should be accorded considerable weight in determining disability.'"); 20 C.F.R. §

404.1520(a) (discussing evidence that is considered in evaluating a claim); 20 C.F.R. § 404.1520(b)

(providing more explanation about how evidence is evaluated); 20 C.F.R. § 404.1527 (discussing

how opinion evidence from physicians is weighed).  The nature of the ALJ's error in this case begins

---

[7] The undersigned notes that the record contains a report (R. 363–365), which includes opinion evidence (R. 365), from one of Plaintiff's treating eye care specialists, Dr. Arguello, that appears to have been the result of an examination conducted on August 23, 2012. The parties do not mention this evidence in the briefing, and the ALJ does not mention this evidence in the written decision either.

with the fact that the ALJ failed to discuss in any meaningful way the report and opinion provided by Dr. Flores, who is an eye specialist and had the opportunity to examine Plaintiff, and failed to indicate the weight it did or should have received. *See, e.g., Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (explaining that the ALJ cannot reject a medical opinion without an explanation); 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *see also Audler,* 501 F.3d at 448 (explaining that, by statute, an ALJ is required to discuss the evidence offered in support of the claimant's claim for disability).

Case law makes it clear that "good cause may permit an ALJ to discount the weight of evidence provided by a treating or examining physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton,* 209 F.3d at 456. However, in this case, not only did the ALJ not discuss the favorable evidence from Dr. Flores, an examining physician, there is no evident or discernable good-cause basis for giving little or no weight to this evidence or for failing to document whether this evidence was considered and weighed. *Cf. Myers*, 238 F.3d at 621 ("Not only did the ALJ fail to take into consideration all of the evidence from the treating doctors, but he also failed to present good cause as to why he should reject it."); *see also Audler,* 501 F.3d at 448 (explaining that where an ALJ offers nothing to support a conclusion, it can impede judicial review because the reviewing court may not be able to tell whether the decision is based on substantial evidence or not).

At the same time, the ALJ accorded "great weight" to the opinion of non-examining agency physicians, who opined that Plaintiff's impairments are not severe within the meaning of the

14

regulations. (R. 21.) The ALJ gave their opinions "great weight" after determining that their opinions were consistent with the record evidence. (*Id.*) However, the ALJ's reasoning that their opinions were consistent with the evidence is suspect because the ALJ failed to discuss favorable medical evidence, including (but not limited to) Dr. Flores' findings and opinion. Further, for the purposes of judicial review only, the non-examining agency physicians' conclusions that Plaintiff's ocular impairments are not severe and are generally asymptomatic appear to conflict with and contradict Dr. Flores' findings, and this conflict undermines the propriety of the ALJ's decision to rely on the non-examining physicians.[8] *See, e.g, Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("[A]n ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician."); 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *cf. Newton*, 209 F.3d at 458, the (emphasizing that this was *not* "a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," nor was it "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion;" instead, the case amounted legal error because "the ALJ summarily rejected the opinions of Newton's treating physician based only on the testimony of a non-specialty medical expert who had not examined the

---

[8] The reviewing physicians had Dr. Flores' 2012 report on hand when they conducted their written review of Plaintiff's impairments (also in 2012), but, again, the ALJ does not discuss Dr. Flores' report in concluding that the non-examining physicians' opinions were consistent with the record evidence.

claimant"). The undersigned also agrees with Plaintiff that the ALJ did not discuss favorable components of the records provided by Plaintiffs' treating eye specialists, Dr. Patel and Dr. Arguello, which include statements, opinions, and notations in them that could provide support for the severity of Plaintiff's eye impairments and associated limitations caused by them, such as blurry vision and an inability to perform certain tasks. *Cf. Myers*, 238 F.3d at 621(explaining that, in the absence of good cause, "ordinarily the opinions, *diagnoses*, and *medical evidence* of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability") (emphasis added); *Loza*, 219 F.3d at 395 (noting that the ALJ failed to "advert" to the treating physicians' continuing diagnoses and treatment of those diagnosed conditions).

The foregoing is particularly troubling because the ALJ ended the sequential analysis at Step 2, which requires a fairly *de minimis* showing on the part of the claimant. If favorable evidence is not properly considered and weighed by the ALJ at Step 2, it can result in the premature, improper cessation of the sequential analysis to the prejudicial detriment of the claimant, which is what occurred in this case. Another troubling aspect of the foregoing is the fact that the ALJ elected to give great weight to the opinions of the non-examining agency physicians when those physicians rendered their opinions in advance of the undisputed, continuing problems with Plaintiff's left eye, which ultimately resulted in a cornea transplant, and this certainly raises concerns about whether the non-examining physicians' assessments were based upon a careful evaluation of the medical evidence and are reconcilable with subsequent records from Plaintiff's treating physicians. *Cf. Villa*, 895 F.2d at 1024 ("[A]n ALJ may properly rely on a non-examining physician's assessment *when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict*

16

*those of the examining physician.*") (emphasis added); *see also Loza*, 219 F.3d at 393 (explaining

that an ALJ is not permitted to "pick and choose" only the evidence that supports his position).

Relatedly, in a case such as this, the dates and temporal relevancy of the medical evidence the ALJ

elects to rely on are particularly important to the question of whether substantial evidence supports

the decision—for example, whether treatment records from 2011 (*see* R. 20), which pre-date some

of the later eye problems Plaintiff experienced, are enough to help substantiate the conclusion that

Plaintiff's ocular impairments were not severe at any point, even for a closed period of disability.

*See Leggett*, 67 F.3d at 564  (explaining that substantial evidence is that which is *relevant* and

*sufficient for a reasonable mind to accept as adequate to support a conclusion*).

Lastly, the undersigned emphasizes that, while ALJ refers expressly to the applicable rules

concerning physician opinions/evidence (R. 21), the mere reference to the applicable rules in this

case is not a sufficient basis on which to conclude that the ALJ adequately considered and weighed

the opinion and medical evidence or adequately documented that process for the purposes of judicial

review. (*See* R. 19–21.) *Cf. Audler,* 501 F.3d at 448 (explaining that, by statute, an ALJ is required

to discuss the evidence offered in support of the claimant's claim for disability and to explain why

he does not find the claimant disabled and explaining that, where an ALJ offers nothing to support

a conclusion, it can impede judicial review because the reviewing court may not be able to tell

whether the decision is based on substantial evidence or not); *Morris*, 864 F.2d at 335

("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such

improprieties would cast into doubt the existence of substantial evidence to support the ALJ's

decision).

Defendant argues in response that the ALJ properly handled the opinion from Dr. Flores about Plaintiff's inability to read, write, or drive due to her vision problems because the same examination showed that Plaintiff had "hand motion" visual acuity and because the ALJ gave great weight to the non-examining agency physicians. (Dkt. Entry No. 16 at 7–8.)  Neither of these justifications is consistent with the case law and regulations for the purposes of this case.  First, simply choosing to give "great weight" to non-examining physicians—especially when there is no adequately discernable justification for doing so in the record—does not, standing alone, constitute good cause or otherwise provide an allowable reason for glossing over or rejecting medical evidence from examining and treating physicians.  Second, it is not apparent from the written decision why the ALJ chose to rely on Dr. Flores' finding that Plaintiff has "hand motion" visual acuity in her left eye in order to conclude that there was nothing severe about Plaintiff's eye impairments;  that same report included findings that could substantiate Plaintiff's subjective complaints about her vision and assist in meeting her burden at Step 2, yet the ALJ failed to acknowledge Dr. Flores' other findings and opinion that Plaintiff's ability to read, write, and drive was very impaired. *See Newton,* 209 F.3d at 456 (explaining the "good cause" standard); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (discussing, but not deciding, the appropriateness of an ALJ substituting his own "medical judgment" for a doctor's).

The undersigned also finds that the ALJ's evaluation of Plaintiff's symptoms and credibility do not support the adverse Step-2 finding in this case.  Plaintiff's alleged vision-related symptomology included distorted/blurry vision, balance problems, problems with judging distance, difficulties viewing things when confronted with sunlight, computer glare, and/or store illumination,

and extreme sensitivity in her right eye to environmental irritants including chemicals, fumes, excess temperatures, and dust. (Dkt. Entry No. 13 at 14.)

The ALJ appears to have employed a number of standards in evaluating Plaintiff's symptomology, which creates a lack of clarity on judicial review. First, while the ALJ found that Plaintiff does have medical impairments that are capable of producing the type of symptoms Plaintiff alleged, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 19.) In this case, that finding is rather ambiguous and boiler-plate because the ALJ never makes clear what those "reasons" are—*i.e.*, the ALJ never truly explains her reasons at any point in the decision. *Cf. Abshire*, 848 F.2d at 642 (explaining that the ALJ must articulate reasons for discrediting the claimant's subjective complaints of pain). Instead, the ALJ makes two additional findings about Plaintiff's allegations and symptomology—both of which (1) appear to impose a higher standard on Plaintiff than she was required to show and (2) fail to clarify the ALJ's reasoning about Plaintiff's symptomology. The ALJ's second written finding, which was made within the ALJ's discussion of the Plaintiff's symptomology and credibility, is that the "record fails to support the allegations of disabling impairments." (R. 19.) That is not an uncommon finding in disability cases, but it is problematic in this case because the ALJ stopped the sequential analysis at Step 2. Plaintiff was not required to "prove" disabling impairments at Step 2, and Plaintiff was not required to show—nor was she alleging—that her subjective complaints and limitations, *standing alone*, are disabling. In effect, the decision strongly suggests the ALJ imposed a higher or improper burden on Plaintiff than is required, particularly at Step 2. For the third finding, the ALJ wrote that "[t]he pivotal question is not whether such symptoms exist, but whether those symptoms impose more than

19

a slight limitation on the claimant's ability to perform work-related activities," and, at that point, the ALJ found that the "the claimant's subjective complaints are inconsistent with the objective medical evidence." (R. 19.) Although the ALJ refers to a variation of the severity standard, the "ultimate" finding (*i.e.,* that the claimant's subjective complaints are inconsistent with the objective medical evidence), like the first finding, is fairly conclusory because the reasoning and evidentiary support for that sweeping finding are not evident from the decision. *Cf. Giles*, 433 F. App'x at 249, 2011 WL 2847449, at *7 (citing 61 FR 34483-01) (unpublished) (explaining that the ALJ's decision "cannot simply make conclusory statements regarding credibility and "must contain specific reasons for the finding on credibility, supported by the evidence in the case record"). The blanket statement that "the subjective complaints are inconsistent with the objective medical evidence" is particularly problematic since the ALJ did not weigh or discuss medical evidence that was favorable to Plaintiff. There was extensive objective medical evidence in the record showing that Plaintiff had verifiable, ongoing medical problems with her eyes (that resulted in invasive surgeries of her left eye, including a cornea transplant), and records from Plaintiff's treating physicians document her eye problems, show the treatment history, and include references to Plaintiff's complaints of her symptoms, such as blurry vision, but the ALJ does not address much of this evidence. Dr. Flores' consultative report provides support for some of Plaintiff's allegations, yet it was not discussed in any meaningful way. *Cf.* 20 C.F.R. §404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence*.") (emphasis added).

The ALJ does not discuss the nature and degree of Plaintiff's symptomology in relation to the medical evidence for the purposes of Step 2. The third finding suggests that the ALJ imposed,

like the second finding, an "all or nothing" standard on Plaintiff—that is, either the evidence supported all of her alleged symptoms or none of them. But that "all or nothing" approach does not comply with the two-step symptomology analysis. Because the ALJ concluded that Plaintiff *does have* medically determinable impairments capable of producing the types of symptoms alleged, the ALJ was required to consider the intensity, persistence, and limiting effects of the symptoms, along with the objective medical and other evidence, in determining whether the impairment or combination of impairments is severe. SSR 96-7p, 1996 WL 374186, at *1; SSR 96–3P, 1996 WL 374181, at *2. That analysis is missing, yet it was very important to whether Plaintiff is able to meet her burden at Step 2 and a closed period of disability. Instead, the ALJ makes a fairly boiler-plate finding that the intensity, persistence, and limiting effects of Plaintiff's symptoms (collectively) are not as bad as Plaintiff claims, which, *in this case*, tells the subsequent reviewer very little. The ALJ does not differentiate in a meaningful way between Plaintiff's visual symptomology and any other alleged subjective symptoms and limitations caused by her other impairments, such as obesity, nor does the ALJ discuss the bi-lateral nature of Plaintiff's eye problems (*i.e.*, the right and the left eyes). For the purposes judicial review, it is not expressly clear from the decision what evidence and symptoms the ALJ *did* or *did not* credit (and to what degree), nor is the ALJ's overall reasoning discernable from the written decision. *See, e.g., Falco*, 27 F.3d at 163 (re-iterating that "when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints . . . ."); *see also Audler,* 501 F.3d at 448 (explaining that, by statute, an ALJ is required to discuss the evidence offered in support of the claimant's claim for disability).

It is well-settled that, as a general rule, a mere diagnosis or the mere existence of an impairment is not sufficient basis, standing alone, to establish disability. *E.g., Anthony v. Sullivan*,

954 F.2d 289, 293 (5th Cir. 1992).  It is the exclusive domain of the ALJ to weigh the evidence, determine the credibility of the witnesses, and evaluate the severity of Plaintiff's ocular impairments, as well as any limitations and symptoms associated with them, based on the evidence.  Moreover, the ALJ is not required to give a point-by-point explanation of the evidence or her findings. However, for the purposes of this case, the undersigned finds that the credibility/symptomology findings are too conclusory for the purposes of judicial review.  Relatedly, the decision does not demonstrate that the ALJ applied the proper symptomology analysis and proper burden on Plaintiff, and it fails to account for favorable medical evidence from treating and examining physicians.  These deficiencies calls into doubt the substantiality of this evidence, which was a crucial part of the ALJ's adverse Step-2 finding.  It was not enough *in this case*—which ends at Step 2, involves a written decision containing a fairly brief discussion of the evidence and limited analysis, and involves ongoing, medically-determinable eye impairments—for the ALJ to make generic credibility and symptomology findings that track the regulatory language and to treat all of the symptoms as one lump package.

Defendant argues that the ALJ's adverse credibility and symptomology findings are supported in part by the ALJ's findings about Plaintiff's daily activities, noting that the ALJ found that Plaintiff could perform her personal care, do laundry, help as much as possible, walk outside, read the Bible, listen to the radio, visit with people in her home, and perform her daily activities without limitation.  (*See* R. 19.)  As Plaintiff points out, however, the ALJ did not give a particularly

accurate description of Plaintiff's daily activities.[9]  That casts further doubt on the substantiality of the evidence in this case.[10]

The undersigned is *not* concluding that the evidence in this case could never support an adverse decision or adverse subsidiary findings in this case.  Instead, the undersigned emphasizes that the problems here are the ALJ's failure to evaluate certain evidence under the proper legal standards, such as not properly addressing favorable medical and opinion evidence, the lack of clarity in the written decision as far as the ALJ's reasoning and evidentiary choices, and the mischaracterization of some of the evidence.

---

[9]  "For instance, the ALJ stated that Plaintiff "does laundry and helps as much as possible," when it appears Plaintiff wrote that she does "very little laundry, cleaning just tries to help out as much as possible." (Dkt. Entry No. 13 at 16 n. 22.)  "Another example is that while Ms. Pena stated that she has 'some people visit her at home' . . ., she elucidated that social activities are 'very uncomfortable for [her] when she has problems seeing.'" (*Id.*)  Also, although Plaintiff stated that "she engaged in ambulatory excursions," "she expounded that she only goes for 'walks' if she is accompanied by someone to 'guide' her because she cannot judge distances" when ambulating. (*Id.*)  Defendant did not address these discrepancies in its briefing.

[10]  The undersigned notes that is not clear or apparent from the decision what the relevance of Plaintiff having visitors and listening to the radio in her home are to the severity of Plaintiff's eyesight or the existence of symptoms associated with the eye impairments.  *See Leggett*, 67 F.3d at 564  (explaining that substantial evidence is that which is *relevant* and *sufficient for a reasonable mind to accept as adequate to support a conclusion*).  The undersigned also observes that the ALJ relies, without explanation, on a report from a cardiologist to suggest that Plaintiff is able to perform her daily activities without limitation, yet there is evidence from eye specialists, such as Dr. Flores and records from treating physicians documenting the history of left eye problems, that could provide support for Plaintiff's claims that her eye problems were truly causing limitations and certain symptomology.  *See id.*  It is not apparent from the written decision how the report from a cardiologist supported the ALJ's decision to discredit Plaintiff's subjective complaints, even those pertaining to her vision, particularly when favorable medical evidence about her eye impairments was not discussed.  While there could be a logical connection between the evidence relied on by the ALJ and the ALJ's analysis of Plaintiff's subjective complaints and symptomology, it is not evident from the written decision.  *Cf. Audler*, 501 F.3d at 448 (explaining that bare conclusions can impede meaningful judicial review); *Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.").

Because the foregoing errors call into question the substantiality of the evidence supporting the final decision at Step 2, and because Plaintiff is able to point to favorable evidence in the record to support the possibility of a different outcome at Step 2, including a possible ability to meet the durational requirement for a closed period of disability (as argued in Plaintiff's briefing), a remand in appropriate.[11]

## VI.  CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings and record, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 12) be **GRANTED** to the extent it is consistent with the findings and conclusions in this Report, that Defendant's Motion for Summary Judgment (Dkt. Entry No. 15) be **DENIED**, and that the Commissioner's final decision to deny benefits be **REVERSED AND REMANDED** for proceedings consistent with the findings and recommendations in this Report.  It is further recommended that this case be closed

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been

---

[11]  Plaintiff is also able to point to the record to show how more favorable findings about limitations caused by her eye impairments might hamper the vocational expert's ability to name jobs that Plaintiff would be able to perform, if the sequential analysis were to proceed. (Dkt. Entry No. 13 at 15.) In this case, a vocational expert testified at the administrative hearing, but that testimony was not part of the final outcome presumably because the ALJ ended the analysis at Step 2.

made.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 30th day of December, 2015.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE